41647.   TAYLOR et al. v. HAYGOOD et al.

SUBMITTED NOVEMBER 1, 1965—DECIDED JANUARY 7, 1966—
REHEARING DENIED JANUARY 24, 1966.

*Louis M. Tatham, J. Richmond Garland,* for appellants.

*Woodruff, Savell, Lane & Williams, Edward L. Savell, Thomas A. Travis, Jr.,* for appellees.

FELTON, Chief Judge. ■ The Appellate Practice Act of 1965, § 5 (Ga. L. 1965, pp. 18, 21; *Code Ann.* § 6-803) provides in part as follows: "A notice of appeal shall be filed within thirty (30) days after entry of the appealable decision or judgment complained of . . . , but when a motion for new trial, or a motion in arrest of judgment, or a motion for judgment notwithstanding the verdict has been filed, the notice shall be filed within thirty (30) days after the order granting, overruling, or otherwise finally disposing of the motion." The judgments complained of in the present cases were entered on January 29, 1965. The timely motions for a new trial were overruled on August 30, 1965. The notice of appeal is dated September 20, 1965. The notice of appeal was filed within 30 days after the overruling of the motions for a new trial as required by the above Act; therefore the motion to dismiss the appeal on the ground that the notice was not filed within 30 days after the judgments complained of is hereby denied.

■ The errors enumerated by the appellants are the court's charges on the plaintiff husband's duty of exercising ordinary care for his own safety, and on comparative or contributory negligence, such charges, it is contended, being unsupported by the evidence.

There was evidence relevant to these charges as follows: The plaintiff driver was driving in the inside or left-hand lane northbound at or about the legal rate of speed, 50 m.p.h.

There were automobiles in front, behind, and alongside of him in the outside lane, all of which were moving at a rapid rate of speed approximating that of the plaintiff. The time of day was twilight. The plaintiff testified that only 5 to 10 seconds before he had any indication that defendant Taylor's automobile was running into the median-divider fence, he was temporarily blinded by the lights on an automobile behind him being turned on, forcing him to flip his night mirror on. His own lights were already on, but those of the oncoming Pontiac were not on, according to the plaintiff, in whose opinion it was not safe to drive without lights at that particular time of day. Although several witnesses observed the Pontiac run off the roadway, creating dust, and run through 150 feet of the fence before striking the patrol car, and Trooper Evans, who was sitting in the right front seat of the patrol car, estimated the distance from the patrol car to the point where he saw the Pontiac run off the roadway to be 1,000 feet, there is nothing to indicate that the plaintiff should have anticipated at that time that the Pontiac would continue through the fence, across the median and into his lane of traffic at the time the Pontiac left the roadway. The plaintiff testified that the first indication he had of the impending wreck was that the chain link fence was bending. The two vehicles were moving toward each other at a combined speed of 100 m.p.h. or more (one witness estimated the Pontiac's speed at 60 m.p.h.). By the time it could have been apparent to the plaintiff that the Pontiac was on a collision course with his vehicle there would have been only a very short time in which to take any measures to avoid the collision, assuming that such measures were available. Killingsworth, driver of a truck which was proceeding behind the patrol car, testified that after the Pontiac's wheels ran off the pavement it *immediately* cut through the fence and into the plaintiff's path. There was no evidence that the plaintiff applied brakes or swerved, but, on the other hand, City of Atlanta patrolman Sewell, who investigated the wreck, testified that in his opinion the Pontiac had hit the plaintiff's patrol car before the latter had time to move or swerve. Even if the plaintiff had time to swerve or apply his brakes after he became aware of his

danger, to have done so under the existing conditions—with rapidly moving cars on three sides of him and the oncoming Pontiac on the fourth—might have been equally or more dangerous than to maintain his course and speed in the line of traffic, as he did. The plaintiff's decision, made under the stress of an emergency situation not created by any act of negligence on his own part, must be evaluated in the light of that situation. The evidence, even viewed in retrospect, would not support a finding that the plaintiff acted in a negligent manner in any respect. "The law is well established that where there is no evidence at all of any negligence on the part of the plaintiff, an instruction on this subject is error." *Jacks v. Lambert,* 111 Ga. App. 763 (1) (143 SE2d 215), and cases cited. Although the verdicts for both plaintiffs were sizable, and not contested as being insufficient, nevertheless the jury might have been led by the charges as to the plaintiff's negligence to believe that there was some such evidence and to diminish the plaintiff's recoveries accordingly. Where pain and suffering are elements of damages, as they are in these cases, the only criterion is the enlightened conscience of impartial jurors, and it is impossible to determine whether the jury was influenced by such a charge. The charges complained of were therefore harmful error requiring a new trial as to defendant Taylor.

■ Defendant Haygood was served with a copy of the notice of appeal, as required by § 4 of the Appellate Practice Act (Ga. L. 1965, pp. 18, 20; *Code Ann.* § 6-802). The verdicts and judgments in favor of this defendant were authorized if not demanded by the evidence and the errors complained of were not argued in the appellant's brief as to the defendant Haygood; hence the issue as to the harm of the alleged illegal charges as to Haygood has been abandoned as a ground of this appeal. It follows that the court's judgments in favor of defendant Haygood must be affirmed.

*Judgments affirmed in part; reversed in part. Jordan and Deen, JJ., concur.*