46650. MEATOWS v. OXFORD.

Per curiam. Jesse P. Oxford sued for damages for personal injuries. His complaint alleged that:

"On June 19, 1967, at about 6 p. m., on a public highway in Fayette County, Georgia, and which is known and designated as Georgia Highway Number 54, the defendant [Mrs. Dorothy Virginia Meatows] negligently drove her automobile into the rear of an automobile owned by and driven by one Harvey Johnston of Auburn, Alabama; the Johnston vehicle was thereby knocked or pushed into the rear of plaintiff's automobile; both the Oxford and Johnston vehicles being lawfully stopped in obeyance of a flagman's stop signal at the time of the multiple collision caused by the defendant."

Mrs. Meatows' answer denied the material allegations of the complaint and set up several matters in defense. The issue made was tried before a jury. The jury found for the plaintiff and awarded a certain sum as damages.

Mrs. Meatows appeals from the denial of her motion for new trial as amended and enumerates the same as error. Separate enumerations are addressed to the overruling of general grounds and each of the special grounds of the motion.

There was evidence that Oxford was driving west on Georgia Highway Number 54 toward Fayetteville. Behind Oxford was a car being driven by one Harvey Johnston. And behind Johnston was the car driven by Mrs. Meatows. It was about 5 or 6

o'clock in the afternoon on June 19, 1967; it was daylight and the weather was clear. The cars were proceeding along at about the posted 60 mph speed limit. Oxford approached a place on the highway where telephone company workmen were working on the opposite side of the road with trucks and machinery laying a telephone cable. As Oxford approached this area a flagman standing on the pavement signaled to Oxford to stop. Oxford stopped. Johnston also observed equipment on the highway and the flagman. He saw that Oxford was applying brakes and stopping. He came to a stop behind Oxford. There is evidence that the car driven by Mrs. Meatows struck Johnston's car in the rear, sending it forward into the rear of Oxford's car. Mrs. Meatows testified: Q. Tell this jury how the thing happened? A. Well, I had been to Jonesboro and picked up the mail and was coming back home on 54, headed west. And I was coming around a curve, and there was no flagman out and no signs. And when I came up into the curve there were cars stopped in the road, and there was a ditch on the right, and I was,—I couldn't go to the right, I had to do the best I could. If I had gone to the right, I would have gone in the ditch and turned over. And if I had gone to the left lane, I might have run into somebody head-on, and it was just a case of emergency and I had to try to stop the best way I could. Q. Were you able to stop your car? A. Well, I slid, I don't know how many feet, because I am not good at judging feet, or anything like that. But I slid a good piece before I hit the car in front of me. . ."

There was evidence from which the jury could conclude that the area of the road in question was visible to approaching drivers from 600 feet away. There was evidence that Johnston's brake lights were seen by Mrs. Meatows. There was evidence that Oxford suffered a "whiplash" injury involving the cervical vertebra region.

1. The jury was authorized to find from the evidence that the defendant was negligent in not keeping a proper lookout and in following closer than was reasonable and prudent under the circumstances and that such was the proximate cause of the plaintiff's injuries. The general grounds of the motion for new trial are without merit.

2. During the course of the trial the plaintiff on redirect examination responded to some questioning as follows: "Q. Were you present when the Highway Patrolman talked to Mrs. Meatows? A. Yes, sir. Q. Could you overhear that conversation? A. He was inquiring from all of us and asked for our driver's licenses and insurance, and we all happened to have it. . ."

The defendant moved for a mistrial, contending that the fact of insurance had deliberately been injected into the case. The trial judge denied the motion, voicing the opinion that the answer was spontaneous and unsolicited. The trial judge immediately rebuked counsel in the presence of the jury and instructed the jury to disregard the allusion to insurance and not to allow it to have any weight whatsoever in the decision of the case; that if the jury nevertheless could not disabuse their minds and found that it had an adverse and prejudicial effect in spite of the court's cautionary instruction, that it should so inform the court, in which event a mistrial would be declared.

The trial judge having promptly rebuked counsel in the jury's presence and cautioned the jury in the manner it did, we do not find that the trial judge abused the discretionary power he has in ruling on motions for mistrial. *Wallace v. Cates,* 120 Ga. App. 228 (170 SE2d 40).

3. At the close of plaintiff's case the defendant moved for a directed verdict. The trial judge allowed the plaintiff to reopen and present additional evidence and denied the motion. This was not error. *Dimmick v. Pullen,* 120 Ga. App. 743 (1) (172 SE2d 196), and citations.

4. The defendant alleged in her answer to the complaint that the sole proximate cause of the incident was the negligence of the plaintiff and therefore the plaintiff is not entitled to recover. It is contended on appeal that the trial court erred in failing to charge the jury with respect to this defense.

The defendant also alleged in her answer that if she was guilty of negligence, then her negligence was equaled or exceeded by the negligence of the plaintiff and therefore the plaintiff is not entitled to recover. The failure to charge the jury in this respect is enumerated as error.

None of the evidence authorized the trial court to so charge the

jury and it did not err in not doing so.

5. There was no basis in the evidence for charging the jury that they might find the *sole proximate cause* of the incident to be a failure to post proper warning signs along in the highway in advance of this location by the employees engaged in laying the telephone cable. Neither did the evidence authorize a similar charge as to the flagman's act of signaling the fast moving cars to a halt. There was no error in not so charging.

6. The jury was charged to be honest, conscientious and impartial in considering the case. There was no error in not charging the exact language of a request to the effect that the jury should not allow sympathy for the plaintiff to enter in their deliberations. *Hardwick v. Price,* 114 Ga. App. 817, 821 (152 SE2d 905).

7. Both plaintiff and defendant were shown to have given testimony at the trial which was at variance with testimony previously given in deposition. Plaintiff's testimony varied with regard to the distances from which he first observed the equipment and the flagman. Defendant's testimony varied as to whether she saw brake lights on the car ahead. Thus, if there was error in not charging defendant's request relating to impeachment, it was harmless.

8. There was no evidence which would have authorized the jury to find that there was any common law negligence or negligence per se (either speeding or stopping without signaling) chargeable to the plaintiff which might have proximately caused his injury. Thus, the 15th, 16th and 18th requests to charge, which were addressed to possible negligence per se findings, comparative negligence, and diminution of damages, were properly refused.

The trial court did not err in denying the defendant's motion for new trial as amended.

*Judgment affirmed. Bell, C. J., Hall, P. J., and Eberhardt, J., concur. Whitman, J., not participating.*

ARGUED OCTOBER 5, 1971—DECIDED NOVEMBER 3, 1971.

*Dunaway, Shelfer, Haas & Newberry, William S. Shelfer, Jr.,* for appellant.

*William R. Hurst,* for appellee.